IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| EAST BRIDGE LOFTS PROPERTY OWNERS ASSOCIATION, INC., CREEKSTONE SC I, LLC, AND CREEKSTONE BUILDERS, INC. | )<br>)<br>)<br>) |
| Plaintiffs, | )<br>) |
| vs. | ) Case No.: 2:14-CV-2567-RMG<br>) |
| CRUM & FORSTER SPECIALTY INSURANCE COMPANY, | )<br>)<br>) |
| Defendant. | )<br>) |

Prepared by R. Bryan Tilden, CPCU, CLU, ARM, ALCM, ChFC, CIC, SCLA
TILDEN AND ASSOCIATES
Pittsboro, North Carolina
April 20, 2015

1

# PREFACE

I, R. Bryan Tilden, have been engaged by counsel for Crum & Forster Specialty Insurance Company, ("C&F") to review certain materials relating to the application of insurance for Commercial General Liability Coverage ("CGL") for the Plaintiff Creekstone Builders ("Creekstone"), and to, in summary, provide my opinion relating to the underwriting and issuance of several CGL policies, all as described in detail in this report.

I have over 41 years' experience in the insurance and risk management industry as an author, broker, consultant, underwriter, drafter of policy forms and endorsements, teacher, historian, claim examiner and consultant for both insureds and insurers. I have placed business, as a retail and surplus lines broker representing the insured, in the international insurance market, including coordinated placements with Lloyd's brokers, Lloyd's syndicates, United States, Canadian, British and European insurance companies. I have worked with Lloyd's brokers, Lloyd's syndicates, United States, Canadian, British, Bermudian and European companies in the drafting, underwriting and placement of insurance policies, both marine and non-marine, and in the adjustment of property and liability losses. I teach the construction, drafting, underwriting, adjusting and analysis of policies throughout the United States, Canada, the Caribbean, Bermuda and the European Union. I have testified in the United States and London regarding the above subject matter. I am familiar with the custom and practices of the international insurance marketplace, including the London, European, Caribbean, Canadian, Bermudian and United States markets.

My curriculum vitae is attached hereto as Exhibit A. I prepared this report after reviewing the documents listed below. My billing rate for consulting expert and expert witness work is $250 an hour.[1] These are my opinions to a reasonable degree of professional certainty. ***Because discovery is ongoing, I reserve the right to amend or supplement this report***.

---

[1] No portion of my compensation is dependent upon the result of this litigation.

## DOCUMENTS PROVIDED

1. Second Amended Complaint; and

2. C&F 000001 – C&F 001926.[2]

## OPINIONS

Creekstone is a Texas insured and procured a CGL policy in the Excess and Surplus ("E&S") marketplace.[3] The E&S marketplace allows U.S. consumers to buy insurance from nonadmitted[4] insurers when consumers are unable to purchase insurance that they need from admitted insurers[5]. E&S insurers provide a positive and legal supplement to the admitted insurance market. The business that E&S insurers generally accept includes distressed risks (those that have underwriting problems), unique risks (those that are difficult to evaluate) and high-capacity risks (those that require very high coverage limits). A nonadmitted insurer writing business in the E&S marketplace does not face regulatory constraints on insurance rates and forms.

Under E&S laws, a nonadmitted insurer is typically permitted to transact business through a specially licensed surplus lines producer if (1) the insurance is not readily available from admitted insurers, (2) the nonadmitted insurer is "acceptable"[6], and (3) the producer has a special license authorizing him or her to place such insurance.

---

[2] Although I was provided with the entire Bates range, I have not reviewed or relied upon pages C&F 1863 to C&F 1865. I understand that these pages are the subject of a discovery dispute.

[3] In custom and practice, excess refers to liability insurance and surplus applies to property insurance. The insurance industry will refer to the marketplace as E&S, regardless of the type of policy being placed.

[4] A nonadmitted insurer is not licensed in the insured's home state; it may be an admitted insurer in other states, and it may even be an alien insurer.

[5] An admitted insurer is licensed by a state insurance department to do business in the insured's home state.

[6] An "acceptable" nonadmitted insurer generally must file a financial statement that the insurance commissioner finds satisfactory; supply documentation of transactions to state regulators; obtain a certificate of compliance from its home state or country; and, if an alien insurer, maintain a trust fund in the United States.

In reviewing the file, Creekstone had a previous loss history that would indicate that the E&S marketplace would be an appropriate alternative for procurement of the CGL. The underwriting file indicates that the Admiral loss ratio[7] was as high as 283%.[8] In simple terms, for every $1 of premium received the insurance company would pay out $2.83 in losses. It would be the custom and practice of the insurance industry to find an account such as this in the E&S marketplace. My review of the file indicates that the Texas Surplus Lines Act would apply and were complied with.

The original application in 2006 represents that Creekstone would be building in Panama Beach, Florida, and no mention was made of South Carolina operations.[9] It was a project specific application. The premium charged was solely for the Florida project, with endorsements changing the effective and expiration dates to correspond to the specific project.

The 2008 renewal negotiations requested the addition of Creekstone SC I, LLC as a named insured, and indicated that it was a dormant company.[10] Because of the change in named insured, Creekstone's agent acknowledged that South Carolina would be excluded by C&F.[11] The renewal negotiations were for ongoing operations in Texas, Louisiana and Florida. An endorsement was attached to the 2008 and 2009 policies confirming and stating that South Carolina would be excluded. No premium was charged for South Carolina operations.

In this case, the insured declared and paid premium on the exposure that they wanted insured. The documents reviewed specifically reference this negotiation. The insurance company,

---

[7] Loss ratio = incurred losses / earned premiums.
[8] C&F 000756.
[9] C&F 000485.
[10] C&F 000685.
[11] C&F 000676.

4

C&F, issued a policy based on the negotiations, and provided a policy that comported to the agreed upon terms and conditions. No premium was charged for the excluded operations.

_____
R. Bryan Tilden
CPCU, CLU, ARM, ALCM, ChFC, CIC